US DIST COURT
WESTERN DIST ARKANSAS
FILED

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

DEC 10 2019

for the

Western District of Arkansas

DOUGLAS F. YOUNG, Clerk

By _____ Deputy Clerk

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Various electronic devices confiscated from 3164 Woodfield Way on August 29, 2019. See Attachment A.

)
)
)
)
)
)

Case No. 19 cm 132

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ Western _____ District of _____ Arkansas _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

*Code Section*
18 U.S.C. 2252/2252A

*Offense Description*
Possession/ Receipt of Child Pornography

The application is based on these facts:

See affidavit of TFO Tommy Wooten

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Tommy Wooten, HSI Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/10/19

_____
*Judge's signature*

City and state: Fayetteville, Arkansas

Honorable Erin L. Wiedemann, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT C

## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF ARKANSAS

**STATE OF ARKANSAS**
:
:
:                    **ss. Carmilo VANNUCCI**
:
**COUNTY OF WASHINGTON**

## Affidavit in Support of Application for Search Warrant

I, Thomas Wooten (Your Affiant), a Task Force Officer with Homeland Security Investigations (HSI), being duly sworn, hereby depose and state as follows:

1.      I am a Task Force Officer with the Department of Homeland Security, Homeland Security Investigations ("HSI"), currently assigned to the Assistant Special Agent in Charge Office in Fayetteville, Arkansas. Since June of 2000, I have been a police officer / detective with the Springdale, Arkansas Police Department. As such, I am authorized by the State of Arkansas to apply for and execute search warrants, arrest warrants and other instruments of the court. As a police officer / detective, I have received specialized training in matters related to criminal investigation, specifically but not limited to the area of sexual exploitation of minors, drug distribution, and money laundering. Since August of 2017, I have been assigned as a Task Force Officer to Homeland Security Investigations (HSI), a component of the U.S. Department of Homeland Security. As a Task Force Officer (TFO) with HSI, I primarily investigate crimes related to the sexual exploitation of minors. Prior to joining HSI, I attended a 40-hour training session covering Title 8, Title 18, Title 19 and Title 21 of the United States Code. As such, I am a law enforcement officer within the meaning of Section 115(c)(I) of Title 18 United States Code, who is authorized by law or Government agency to engage in or supervise the prevention,

detection, investigation and/or prosecution of any violation of Federal and State criminal law. Since joining HSI as a taskforce officer, your Affiant has received training in Cellebrite Mobile Forensics, Passmark Software/OSForensics Triage tools, and has obtained certifications as a Cellebrite Certified Operator, Cellebrite Certified Physical Analyst and OSForensics Triage Operator.

2.      This Affidavit is being submitted in support of an application for a search warrant for electronic devices and storage mediums which were confiscated from Carmilo VANNUCCI on August 29, 2019, at his residence located at 3164 Woodfield Way, Fayetteville, AR 72704:

1. one (1) Black Toshiba laptop computer
2. one (1) Silver Acer laptop computer
3. one (1) Gray ASUS laptop computer
4. one (1) silver 64GB PNY flash drive
5. one (1) Black Apple iPhone X
6. one (1) Red HTC smartphone
7. one (1) White HTC smartphone
8. one (1) Seagate 80GB 2.5-inch hard drive
9. one (1) SanDisk Ultra 64GB microSD card
10. one (1) SanDisk 2GB SD card
11. one (1) Black Western Digital My Passport external hard drive
12. one (1) Black Seagate 1.5TB Free Agent external hard drive
13. one (1) Silver Samsung Galaxy S7 Active smartphone
14. one (1) Gray Samsung 8GB tablet

also referred to as "**SUBJECT ITEMS**". As such, it does not include all of the information known to me as part of this investigation, but only information sufficient to establish probable cause for the requested search warrant.

## Statutory Authority

3.      This investigation concerns alleged violations of Title 18, United States Code, Sections 2252 and 2252A, relating to material involving the sexual exploitation of minors, which has been defined in Title 18 U.S.C. 2256, as an individual under 18 years of age.

a.    Under Title 18, United States Code, Sections 2252(a)(1) (transportation), 2252(a)(2) (receipt and distribution), and 2252(a)(4)(B) and 2252A(a)(5)(B) (possession), it is a federal crime for any person to transport, distribute, receive, and possess child pornography, as that term is defined by federal law. Further under Title 18, United States Code, Section 2253(a)(3), a person who is convicted of an offense under Title 18, United States Code, Section 2252 or 2252A, shall forfeit to the United States such person's interest in any property, real or personal, used or intended to be used to commit or to promote the commission of such offense.

## Computers and Child Pornography

4.    Based upon my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, I know that computers and computer technology have revolutionized the way in which child pornography is produced, distributed and utilized. Prior to the advent of computers and the Internet, child pornography was produced using cameras and film, resulting in either still photographs or movies. The photographs required darkroom facilities and a significant amount of skill in order to develop ad reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these images on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls, and compensation for these wares would follow the same paths. More recently, through the use of computers and the Internet, distributors of child pornography use membership-base/subscription-based websites to conduct business, allowing them to remain relatively anonymous.

5. In addition, based upon my own knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, I know that the development of computers has also revolutionized the way in which those who seek out child pornography are able to obtain this material. Computers serve four basic functions in connection with child pornography: production, communication, distribution, and storage. More specifically, the development of computers has changed the methods used by those who seek to obtain access to child pornography in these ways.

6. Producers of child pornography can now produce both still and moving images directly from a common video or digital camera. The camera is attached, using a device such as a cable, or digital images are often uploaded from the camera's memory card, directly to the computer. Images can then be stored, manipulated, transferred, or printed directly from the computer. Images can be edited in ways similar to how a photograph may be altered. Images can be lightened, darkened, cropped, or otherwise manipulated. As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography. In addition, there is an added benefit to the pornographer in that this method of production does not leave as large a trail for law enforcement to follow.

7. The Internet allows any computer to connect to another computer. By connecting to a host computer, electronic contact can be made to literally millions of computers around the world. A host computer is one that is attached to a network and serves many users. Host computers are sometimes operated by commercial Internet Service Providers (ISPs) which allow subscribers to dial a local number and connect to a network which is, in turn, connected to the host systems. Host computers, including ISPs, allow e-mail service between subscribers and sometimes between

their own subscribers and those of other networks. In addition, these service providers act as a gateway for their subscribers to the Internet or the World Wide Web.

8. The Internet allows users, while still maintaining anonymity, to easily locate other individuals with similar interests in child pornography; and websites that offer images of child pornography. Those who seek to obtain images or videos of child pornography can use standard Internet connections, such as those provided by business, universities, and government agencies, to communicate with each other and to distribute child pornography. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired. All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions involving those who wish to gain access to child pornography over the Internet. Sometimes the only way to identify both parties and verify the transportation of child pornography over the Internet is to examine the recipient's computer, including the Internet history and cache to look for "footprints" of the websites and images accessed by the recipient.

9. The computer's capability to store images in digital form makes it an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as a "hard drive") used in home computers has grown tremendously with the last several years. Hard drives with the capacity of 160 gigabytes are not uncommon. These drives can store thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of the crime." Only

with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

10. It should be noted that Internet Protocol (IP) numbers are unique identifiers leased to Internet customers by their ISP's. Although IP numbers are capable of changing over time, only one (1) unique IP number can be assigned to a given customer's computer at any given time. Logs of these leased IP's (and their assigned customer accounts) are stored by ISP's routinely.

11. Your Affiant knows from his own experience and the training and experience of other law enforcement officers that Internet computers identify each other by an Internet Protocol or IP address. These IP addresses can assist law enforcement in finding a particular computer on the Internet. These IP addresses can typically lead the law enforcement officer to a particular Internet service company and that company can typically identify the account that uses the address to access the Internet.

## Summary of the Investigation to Date

12. On August 29, 2019 at approximately 13:28 hours, Fayetteville, Arkansas Police Detective, Stacy Dicus, was assigned to a child pornography case involving Carmilo Javon VANNUCCI (hereinafter identified as VANNUCCI). On August 29, 2019, VANNUCCI'S girlfriend, E.Y., contacted the Fayetteville Police Department to request a civil standby. She informed arriving officers that she had been involved in a physical altercation with VANNUCCI, at 3164 Woodfield Way in Fayetteville. She and VANNUCCI had struggled over a gun after he threatened to kill her. E.Y. stated she left their house and stopped at Harp's to meet with officers. E.Y. told officers the issues began when she searched VANNUCCI'S cellular telephone and found child pornography saved on the device. E.Y. stated that she took photographs of VANNUCCI's phone with her personal cellular telephone to document what she found; she then showed

Fayetteville patrol officer Kuchenbecker the photographs. Detective Dicus informed responding officers to speak with VANNUCCI about the incident and they subsequently arrested him for state charges of terroristic threatening and aggravated assault on a family or household member. VANNUCCI was transported to the Fayetteville Police Department for arrest processing.

13. Detective Dicus responded to 3164 Woodfield Way and met with E.Y. about the incident. E.Y. gave permission for Detective Dicus to enter the residence with her while she changed clothes. Detective Dicus observed a black iPhone sitting on the kitchen table. E.Y. pointed at the iPhone and said, "[T]hat's VANNUCCI's phone". She went on to say, that it was the phone upon which she had found the child pornography. E.Y. then pointed to a laptop computer in a bedroom and told Detective Dicus that it was the computer VANNUCCI used to access the "black web." After E.Y. changed clothes, they left the residence and patrol officer Mills remained on-scene until a search warrant was obtained.

14. Detective Dicus escorted E.Y. to the Fayetteville Police Department where she was interviewed about the incident. E.Y. stated that she believed that VANNUCCI was potentially cheating on her. In the days preceding the altercation, VANNUCCI left his cell phone unlocked and left the room. E.Y. said she began looking through his cell phone and found what she believed to be child pornography on the phone. E.Y. stated that, using her own cell phone, she took photographs of the pictures in VANNUCCI's phone to document what she found. E.Y. stated that she later confronted VANNUCCI about the photographs on his cellular phone and he responded by telling her that he was glad she found them and told her that he had been dealing with this issue since he was about 14 years old.

15. Detective Dicus asked E.Y. if she would consent to allowing Detective Dicus to view the suspected child pornography images that she photographed with her cellular phone.

Detective Dicus provided E.Y. a consent to search form and she agreed to let investigators search her phone. Detective Dicus explained to E.Y. that a search warrant would also be executed at her residence for any computer/digital devices and that she would be contacted when the search was complete.

16.    On August 29, 2019 at 15:03 hours, law enforcement officers from the Fayetteville Police Department executed a search warrant at the VANNUCCI residence. As a result of the search warrant, numerous computer/digital devices were confiscated from VANNUCCI'S residence pursuant to the search warrant and later turned over to HSI ASAC Fayetteville, Arkansas (Northwest Arkansas Internet Crimes Against Children (ICAC) Task Force) for forensic processing. Of the devices confiscated, the following devices were evaluated and determined to be items of interest and in need of forensic processing (hereinafter identified as **SUBJECT ITEMS**):

1. one (1) Black Toshiba laptop computer
2. one (1) Silver Acer laptop computer
3. one (1) Gray ASUS laptop computer
4. one (1) silver 64GB PNY flash drive
5. one (1) Black Apple iPhone X
6. one (1) Red HTC smartphone
7. one (1) White HTC smartphone
8. one (1) Seagate 80GB 2.5-inch hard drive
9. one (1) SanDisk Ultra 64GB microSD card
10. one (1) SanDisk 2GB SD card
11. one (1) Black Western Digital My Passport external hard drive
12. one (1) Black Seagate 1.5TB Free Agent external hard drive
13. one (1) Silver Samsung Galaxy S7 Active smartphone
14. one (1) Gray Samsung 8GB tablet

17.    On August 29, 2019, ICAC Detective Andy Higdon, was contacted about the potential child pornography on the cellular phone and assisted with a Cellebrite search of E.Y.'s phone. Detective Higdon subsequently located several images of child pornography on E.Y.'s

cellular phone and described the photographs as, "pictures taken of another phone that contained the child pornography."

18.     On August 29, 2019 at approximately 14:37 hours, Detective Higdon conducted a logical extraction of the Apple iPhone 8 belonging to E.Y., using Cellebrite Physical Analyzer forensic software. The subsequent examination of the data from the iPhone 8, led to the discovery of two hundred sixty-two (262) pictures that were taken of images on VANNUCCI'S phone. The photographs showed to have been taken with E.Y.'s cellular phone on August 05, 2019. Pictures found on E.Y.'s cellular phone included images of VANNUCCI, prescription drugs, a glass marijuana pipe, guns, adult pornography, child erotica and child pornography photographs. The images of child erotica and child pornography involved young girls whose approximate ages range from four (4) to fourteen (14) years old. There were also numerous images of child erotica in which the young girls were posing in bikinis or underwear; many of whom were in sexually suggestive positions. Fourteen (14) images of child pornography were found on the device. Several of these images are very sexually explicit, including young girls performing oral sex on adult males. Two of the captured images are described as follows:

1.  Filename:     IMG_5409

    This image depicts a white prepubescent female between the age of five (5) to eight (8) years old performing oral sex on an adult white male. The female is wearing a green t-shirt and handcuffs around her wrists. The focus of the camera shows the child with the male's penis in her mouth while being handcuffed.

2.  Filename:     IMG_5417

    This image depicts a white prepubescent female between the age of five (5) to eight (8) years old lying down on a multi-colored plaid sheet. An adult male is

penetrating the child's vagina with his penis. The focus of the camera is on the minors exposed vagina, with the adult males penis partially inserted inside of her.

19.     As a result of the investigation led by the Fayetteville, Arkansas Police Department, your Affiant is requesting a search warrant for the purpose of conducting forensic examinations on the SUBJECT ITEMS that were confiscated from VANNUCCI'S residence pursuant to the state search warrant.

### CHARACTERISTICS COMMON TO CHILD PORNOGRAPHERS

20.     Based on my training, knowledge and experience, I am aware that individuals who commit online sexual exploitation offenses involving minors will often collect and/or view child pornography on their computer, and digital media storage devices, for several reasons:

a.     They will receive sexual gratification and satisfaction, and/or fantasize about sexual contact with minors by viewing minors engaged in sexual activity or sexually suggestive poses;

b.     They collect sexually explicit or sexually suggestive materials of minors in a variety of media that they use for their own sexual arousal and/or gratification;

c.     They almost always possess and maintain their material in the privacy and security of their homes or some secure location. Child pornography producers/collectors typically store their child pornography amongst other, otherwise legal media or files. Digital evidence, like child pornography contraband, is different than traditional evidence that can be concealed, transferred to other devices, used and/or destroyed and is not as volatile as other illegal items like narcotics; and

d.     Likewise, collectors of child pornography often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as

a computer and surrounding area. These collections are often maintained for several years and are kept close by, to enable the collector to view the collection, which is valued highly. As such, child pornographers often create duplicates of or "back up" digital images of child pornography on multiple devices.

## Conclusion

21. Based on my experience and the training and experience of other agents, many of the items sought in this Affidavit may be stored electronically. Based on my experience and consultation with computer forensic experts, I know that electronic files can be easily moved from computer or electronic storage medium to another computer or medium. Therefore, electronic files downloaded to or created on one computer can be copied on or transferred to any other computer or storage medium at the same location. In addition, based on my experience, I know that searching computerized information for evidence of crime often requires special agents to seize most or all of a computer system's central processing unit (CPU), input/output peripheral devices, related software, documentation, and data security devices, including passwords, so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment.

22. Technical requirements: Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to analyze the system and its data. In any event, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely

vulnerable to inadvertent or intentional destruction (both from external sources and from destructive code embedded in the system such as a "booby trap"), a controlled environment is essential to its complete and accurate analysis.

23. Based on my experience and the training and experience of other agents involved with this investigation, your Affiant knows that individuals involved in the sexual exploitation of children through child pornography almost always keep copies of their sexually explicit material. Among the reason's copies are maintained is because child pornography is illegal to openly purchase, and the most common method of acquiring it is by trading with other people with similar interests. It is also known that due to the inherent illegality of these sexually explicit materials, they are most often kept in a place considered secure, usually a residence, to avoid detection by law enforcement.

24. Based on the foregoing information, probable cause exists to believe there is located on, the **SUBJECT ITEMS**, evidence of violations of Title 18, United States Code, Sections 2252 and 2252A, et seq. Your Affiant prays upon his honorable court to issue a search warrant for the **SUBJECT ITEMS** for the items set forth in attachment "B" (which is attached hereto and incorporated herein by reference), that constitute evidence, fruits, and instrumentalities of violation of Title 18, United States Code, Sections 2252 and 2252A, et seq.

Thomas Wooten, Task Force Officer
Homeland Security Investigations

Affidavit subscribed and sworn to before me this _____ 10th _____ day of _____ December _____ 2019

Honorable Erin L. Wiedemann
Chief United States Magistrate Judge

ATTACHMENT A
DESCRIPTION OF PROPERTY TO BE SEARCHED

**The following electronic devices** (SUBJECT ITEMS) **confiscated from Carmilo VANNUCCI on August 29, 2019, at his residence located at 3164 Woodfield Way, Fayetteville, AR 72704. The subject items are currently held at the HSI office, located in Fayetteville, Arkansas:**

1. one (1) Black Toshiba laptop computer
2. one (1) Silver Acer laptop computer
3. one (1) Gray ASUS laptop computer
4. one (1) silver 64GB PNY flash drive
5. one (1) Black Apple iPhone X
6. one (1) Red HTC smartphone
7. one (1) White HTC smartphone
8. one (1) Seagate 80GB 2.5-inch hard drive
9. one (1) SanDisk Ultra 64GB microSD card
10. one (1) SanDisk 2GB SD card
11. one (1) Black Western Digital My Passport external hard drive
12. one (1) Black Seagate 1.5TB Free Agent external hard drive
13. one (1) Silver Samsung Galaxy S7 Active smartphone
14. one (1) Gray Samsung 8GB tablet

## ATTACHMENT B
## ITEMS TO BE SEARCHED FOR AND SEIZED

a.    Any and all images of suspected child pornography and files containing images of suspected child pornography, any and all images believed to be an attempt to produce child pornography, in any form wherever it may be stored or found including, but not limited to:

    i.    originals, thumbnails, and copies of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and

    ii.    videos (AKA motion pictures, films, film negatives), and other recordings or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

    iii.    Images self-produced of the defendant and minors, and attempts to take or produce such.

    iv.    Images of children, nude or otherwise, possessed, sent, received, or via message, email, or otherwise stored on the phone.

    v.    Internet history, including CACHE memory related to internet searches for child pornography or websites that could pertain such.

b.    information or correspondence pertaining to the solicitation of others for sexual activity involving minors, and any and all information, messages, etc related to the sexual exploitation of children, including but not limited to:

    i.    correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, text messages, establishing possession, identity of individuals, access to, or transmission through interstate or foreign commerce, including by United States mail or by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

    ii.    records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

    iii.    Any and all address lists, names, contact information of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256; and/or any information evidencing contact or correspondence with minors or adults in whatever form.

iv.    Any and all chat log, text messages, email, or any type of communication in any form that is related to the sexual exploitation of minors for sexual purposes or related to the production, distribution or possession of child pornography.

c.    records evidencing ownership of the subject item, including in and all lists of names, telephone numbers, addresses and contacts, and the content of voice mails and text messages and internet-based applications, and internet or purchase history for any and all sexual devices, including but not limited to dildos, vibrators and sexual games.

d.    Any and all security devices, to include encryption devices, needed to gain access to the phone;

e.    Any and all address lists, names, contact information of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256; and/or any information evidencing contact or correspondence with minors or adults in whatever form.

f.    Any and all recordings, including those made by the defendant or the minor victim, or anyone else that depicts the defendant or others engaging in sexually explicit conduct of any type.

g.    In searching the data, the computer personnel may examine and copy all of the data contained in the subject item to view their precise contents and determine whether the data falls within the items to be seized. In addition, the examining personnel may search for and attempt to recover deleted, hidden, or encrypted data to determine whether the data falls within the list of items to be seized.